# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DAVID A. GAMBINO,

    Plaintiff,

    v.

FRANK HERSHBERGER, *et al.*,

    Defendants.

Civil Action No. TDC-17-1701
Consolidated with TDC-17-2311

## MEMORANDUM OPINION

David A. Gambino, a self-represented prisoner at Federal Correctional Institution ("FCI")

Schuylkill in Minersville, Pennsylvania, has filed two consolidated civil actions primarily alleging

deliberate indifference to his medical and mental health conditions, excessive force, and retaliation

suffered while he was incarcerated at FCI Cumberland in Cumberland, Maryland from March 3,

2015 to March 7, 2016. Pending before the Court is a Motion to Dismiss, or in the Alternative,

for Summary Judgment ("Motion to Dismiss"), filed by the United States of America and the

Federal Bureau of Prisons (collectively, "the Government"). Also pending are the Government's

Motion to Seal and Gambino's two Motions to Appoint Counsel, two Motions for a Stay, and

Motion for Leave to Amend Response. Having reviewed the submitted materials, the Court finds

that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the

Government's Motion to Dismiss and Gambino's Motion for Leave to Amend Response will be

granted, and the remainder of Gambino's Motions will be denied. The Government's Motion to

Seal will be granted in part and denied in part. Because the Government's Motion to Dismiss does

not address all claims against all Defendants, the remainder of Gambino's claims will proceed.

## BACKGROUND

Although Gambino's Complaints consist of a total of 290 pages, and both the Government and Gambino have attached multiple exhibits to the briefing on the Motion to Dismiss, the Court sets forth only those facts and allegations relevant to the disposition of the pending motions.

### I.  The 1701 Complaint

On July 21, 2017, Gambino filed his Complaint in Case No. TDC-17-1701 ("the 1701 Complaint"), which asserts claims against the Federal Bureau of Prisons ("BOP"), Warden Stewart of FCI Cumberland, eight other named correctional personnel or medical personnel at FCI Cumberland, and various unidentified John Doe Defendants. The named individual Defendants are: Frank Hershberger, Shane Sheetz, Kristi Crites, Dr. Moubarek, Brett Dodd, Lieutenant Eirich, Nurse Todd, and Counselor Smith. The 1701 Complaint asserts claims pursuant to *Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1983 for violations of constitutional rights; the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80 (2012); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134 (2012); the Sarbanes-Oxley Act, 15 U.S.C. §§ 7201 *et seq.* (2012); and the Privacy Act of 1974 ("the Privacy Act"), 5 U.S.C. § 552a (2012). Because FCI Cumberland is a federal facility operated by the federal government, the Court will construe all § 1983 claims to be *Bivens* claims. Construing the 1701 Complaint liberally, the Court identifies the following claims.

First, Gambino alleges that Defendants acted with deliberate indifference to his medical and mental health needs by failing to properly treat him for post-traumatic stress disorder, paranoid delusional disorder, and bipolar disorder. Among other things, he asserts that Defendants improperly prescribed him the medication Citropram for suicidal ideations in October 2015 and that in February 2, 2016, Defendants failed properly to respond to several suicide attempts by

2

Gambino, used excessive force in handling him after such attempts, and falsified or destroyed records to cover up their violations. Based on these allegations, Gambino has alleged a *Bivens* claim that Defendants violated the Eighth Amendment to the United States Constitution based on deliberate indifference to his medical and mental health needs, as well as common law tort claims under the FTCA.

Second, Gambino alleges that Defendants violated the First Amendment by retaliating against him for pursuing legal action against prison personnel, including by threatening rape and sexual assault, slapping him, and touching him in a sexual manner. In addition to a *Bivens* claim for the alleged constitutional violation, Gambino also asserts common law tort claims under the FTCA based on this conduct.

Third, Gambino alleges certain claims relating to records. Specifically, he alleges that Defendants falsified records and destroyed emails relating to his mental health care, in violation of the Sarbanes-Oxley Act. Relatedly, he alleges that certain legal materials and evidence relating to claims against prison officials were destroyed, and certain of his personal records were released to the public, in retaliation for his filing of legal claims and in violation of his right to access the courts, in violation of the First Amendment. He alleges that the destruction of these materials also violated the Sarbanes-Oxley Act and the release of his personal records violated the Privacy Act.

Fourth, Gambino alleges that Defendants failed to provide accommodations for his disability, such as a cane, special shoes, and adult diapers, in violation of the ADA.

Finally, Gambino alleges *Bivens* claims against the Warden and other prison officials for failing to protect him from the various violations asserted, presumably by exhibiting deliberate indifference to inmate health and safety, in violation of the Eighth Amendment.

## II.      The 2311 Complaint

On August 7, 2017, Gambino filed Case No. TDC-17-2311 with a 138-page Complaint ("the 2311 Complaint"), accompanied by more than 200 pages of exhibits, against Warden Stewart and the following medical providers and correctional personnel: Moubarek, Carol Miller, Crites, Tom Gera, Todd, Jody Amerzua, P. Boch, Denise Vanmeter, Tequilla McGahee, Smith, and Carrie Hanscom. The 2311 Complaint includes allegations of improper medical and dental care, failure to protect, excessive force, creation of false records, destruction of property, and retaliation. His claims are brought pursuant to the Eighth and First Amendments through a *Bivens* action, the FTCA, the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb-1 to 2000bb-4, the ADA, the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733 (2012), and the Privacy Act. The Complaint seeks $80 million in compensatory and punitive damages, as well as injunctive relief. Construing the 2311 Complaint liberally, the Court identifies the following claims.

First, Gambino alleges several instances of alleged deliberate indifference to his medical needs. He asserts that beginning on March 3, 2015, he was provided inadequate medical care for a skin infection and for spinal and stomach conditions, including by discontinuing his prescription for Prilosec. He also alleges that FCI Cumberland medical personnel failed to properly treat his severe back pain and a severe fungal infection, and that he received inadequate dental care that resulted in an infected wisdom tooth. Gambino also alleges that Defendants turned off the water in his cell in July 2015 while he was on a hunger strike, which endangered his health and safety. Based on these allegations, Gambino asserts, under *Bivens*, that Defendants violated the Eighth Amendment by acting with deliberate indifference to his medical and dental needs. He also alleges

retaliation in violation of the First Amendment for his filing of grievances relating to his inadequate medical care, as well as common law tort claims under the FTCA based on the same allegations.

Second, Gambino asserts a RFRA claim arising from his dental care because a dentist recommended the extraction of his wisdom tooth. According to Gambino, extraction of a tooth would violate his religious beliefs.

Third, Gambino asserts a violation of the ADA based on his allegation that Defendants withheld from him accommodations for his disabilities, such as walking aids, bathroom bars, foot lifts, work restrictions, and certain bunk locations.

Fourth, Gambino asserts a claim under the FCA based on his allegations that certain Defendants falsified or altered medical records to avoid documentation of his serious medical needs and the failure to address them, and that as a result, Defendants were reimbursed for medical services that were never performed on him. He also alleges common law torts under the FTCA based on these same allegations.

## III.    RFRA

Specific to his RFRA claim, Gambino alleges that because of inadequate dental care, including the lack of regular cleanings, one of his wisdom teeth became infected, and a dentist recommended that it be extracted. However, according to Gambino, his religious beliefs include a belief that all body parts are necessary and that amputation of any body part is prohibited. He states that he was left to choose between preservation of his tooth as required by his religious beliefs and the substantial risk of a deadly infection. He further alleges that he was forced to sign a form accepting responsibility for the consequences of failing to consent to the extraction of his tooth, in violation of RFRA. Although he criticizes the level of dental care that led to his condition,

Gambino also claims that the tooth does not need to be extracted and that the only purpose of removing it would be to allow the oral surgeon to profit at the expense of his religious beliefs.

According to a declaration and records submitted by Dr. Tequilla McGahee, the dentist, on April 21, 2015 she recommended that the tooth be extracted to avoid the risk of a severe infection. When Gambino declined to agree to the extraction for religious reasons, Dr. McGahee had him sign the form acknowledging that he understood the risks of not proceeding with the extraction. No extraction occurred. Although Dr. McGahee declined Gambino's request for a regular schedule of multiple cleanings per year as not feasible and not medically necessary, she informed him that he could receive irrigation and cleaning of his tooth through sick call requests.

## IV. Exhaustion of Administrative Remedies

In support of its claim that Gambino did not exhaust administrative remedies on any Rehabilitation Act claim, the Government has submitted a declaration from Steven B. Cason, a Senior Equal Employment Opportunity Specialist at the BOP, asserting that as of August 15, 2018, Gambino had not filed any complaints with his office relating to alleged violations of the Rehabilitation Act or any discrimination on the basis of handicap.

## V. Procedural History

The United States Attorney's Office for the District of Maryland has accepted service for the Government and for the individual Defendants in both cases only in their official capacities. On August 1, 2018, the Court consolidated the two cases and granted Gambino's Motion to Effectuate Service on Defendants Stewart, Hershberger, Sheetz, Crites, Moubarek, Dodd, Eirich, Todd, and Smith in Case No. TDC-17-1701 and Defendants Stewart, Moubarek, Miller, Crites, Gera, Todd, Amerzua, Boch, Vanmeter, McGahee, Smith, and Hanscom in Case No. TDC-17-

2311. Service, however, has not yet been effected on these Defendants in their individual capacities.

## DISCUSSION

In support of the Motion to Dismiss, the Government argues that certain of Gambino's claims should be dismissed or summary judgment entered in its favor on the grounds that: (1) Gambino did not adequately meet prerequisites required to bring suit under the FTCA and, in any event, BOP health care providers did not breach their duty of care; (2) he has failed to state a plausible RFRA claim; and (3) he has failed to state a claim under the Rehabilitation Act. The Government has also filed a Motion to Seal its dispositive motion and all attachments. Because claims against a government official in his or her official capacity constitute claims against the Government, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the Court will construe the Motion as seeking dismissal or summary judgment of claims against the United States, the BOP, and the individual Defendants in their official capacities.

For his part, Gambino has filed two Motions for Appointment of Counsel, two Motions for a Stay, and a Motion for Leave to File an Amended Response to the Government's Motion to Dismiss. The Court will first address the various preliminary, non-dispositive motions before proceeding to the Motion to Dismiss.

## I.    Preliminary Motions

### A.    Motions for Appointment of Counsel

Gambino requests appointment of counsel because the issues in this case are complex and because, he alleges, Defendants have declined to assist him in securing expert testimony relating to his medical claims. He also claims that because he is in the Special Housing Unit, he has no access to his legal materials, postage stamps, and photocopying, and that he is restricted from

viewing research material in the prison law library by a "fence over the screen." Mot. Appoint Counsel 2, ECF No. 22. Gambino also claims that the BOP is withholding documents he needs to properly respond to the Government's Motion to Dismiss.

"The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances.

Gambino is an experienced self-represented litigant in federal court. *See e.g. Gambino v. Moubarek*, No. TDC-15-2202 (D. Md.); *Gambino v. Hershberger*, No. TDC-16-3806 (D. Md.); *Gambino v. Warden, FCI Schuykill*, No. 3:18-cv-2241-MEM-DB (M.D. Pa.); *Gambino v. FCI Schuykill Warden*, No. 3:19-cv-249-MEM-DB (M.D. Pa.); *Gambino v. Doe*, No. 3:19-cv-0413-S-BN (N.D. Tex.); *Gambino v. Pugh*, No. 4:13-cv-00817-SL (N.D. Ohio); *Gambino v. Whitney*, No. 1:12-cv-00792-HBS (W.D.N.Y.); *Gambino v. Chief Payne*, No. 1:12-cv-00824-LJV-MJR (W.D.N.Y.). In two cases, district courts have appointed counsel to represent Gambino. *See Gambino v. Meeks*, No. 1:14-cv-00236-BR-SPB (W.D. Pa.); *Gambino v. Cassano*, No. 1:17-cv-00830-NLH-AMD (D.N.J.). Although Gambino has filed numerous claims, the issues are not unduly complex, and his filings thus far have demonstrated his ability to present his claims and

respond to Defendants' claims. Although Gambino's legal materials may have been delayed in his transfer between correctional facilities, Gambino ultimately received the materials, and this Court has and will grant reasonable extensions to accommodate any difficulties Gambino faces in responding to legal filings. The Court therefore finds that appointment of counsel is not warranted at this time. The Motions for Appointment of Counsel will be denied without prejudice. Should the case progress to discovery or a hearing, Gambino may re-file a motion for appointment of counsel.

### B. Motions to Stay

On August 27, 2018, shortly after the Government filed its Motion to Dismiss, Gambino filed a Motion to Stay or for a Continuance, ECF No. 23, in which he stated that he has not been provided discovery and did not have access to his legal materials. He further asserted that he was being rushed to respond to the Government's Motion.

Because Gambino filed a Response to the Motion to Dismiss, and, as discussed below, the Court will accept his amended Response, there no longer remains any basis to stay the proceedings or for a continuance. As for discovery, Gambino has not specified what discovery he requires. Whether discovery is necessary before the Court resolves the Government's Motion to Dismiss will be discussed below, in the Court's consideration of that Motion. Thus, the Motion to Stay or for a Continuance will be denied.

On October 1, 2018, Gambino filed an additional motion entitled "Motion to Stay or in the Alternative Take Leave," ECF No. 29, in which he stated that he was being transferred to a new prison and asked for a stay of proceedings until he notified the Court of his address change because of his concern that his legal materials would not be delivered to him at the new facility.

Gambino has since received his legal materials, and he notified the court of his new address. He has also filed a Motion for Leave to Amend his Original Response to the Motion to Dismiss, which will be granted. Accordingly, Gambino's Motion to Stay or Take Leave will be denied.

### C.     Motion for Leave to Amend Response

On January 28, 2019, Gambino filed a Motion for Leave to Amend his Response to the Motion to Dismiss, in which requested that the Court strike his original Response to the Motion and replace it with a new version. Gambino stated that the Amended Response is necessary because he lacked access to his to legal materials from August 17, 2018 through November 8, 2018, which includes the time period when he prepared his original Response to the Motion. The Amended Response, attached to Gambino's motion, includes exhibits, his declaration, and declarations of other inmates at FCI Cumberland. Gambino states at the bottom of the Amended Response that "the above is true and fact." Am. Response 55, ECF No. 32-1. The Government does not oppose Gambino's Motion. Accordingly, the Court will grant the Motion and consider the Amended Response and Exhibits to be Gambino's Response to the Motion to Dismiss.

### D.     Motion to Seal

With its Motion to Dismiss, the Government filed a Motion to Seal, which asserts that because its Motion, supporting memorandum of law, and exhibits discuss Gambino's medical history and are not amenable to redaction without rendering the filings unreadable, the filings should be sealed. The Court agrees that Gambino's sensitive personal and medical information should be sealed, but it concludes that not all of the Government's submission contains such information or cannot reasonably be redacted. Accordingly, the Court will grant the motion to the extent that it will order that the Declaration of Tequilla McGahee and its attachments, ECF No.

19-2, and the Declaration of Mohammed Moubarek, M.D. and its attachments, ECF No. 19-3, be sealed. The Court will also order the sealing of part II of the Government's Memorandum of Law in Support of its Motion to Dismiss, ECF No. 19-1, but the remainder of that filing will not be sealed. The Government will be directed to file a redacted version of ECF No. 19-1 that will constitute the public version of that document.

## II.    Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

The Government's Motion to Dismiss addresses only claims against the Government, not the individual Defendants, and it is limited to seeking dismissal of the FTCA medical malpractice and negligence claims, the RFRA claim, and any Rehabilitation Act claim. The Court will also address Gambino's ADA, FCA, and Sarbanes-Oxley Act claims pursuant to its authority to screen prisoner complaints under 28 U.S.C. § 1915A.

### A.    Legal Standards

The Government's argument that Gambino's FTCA claims must be dismissed because he did not comply with administrative requirements is a jurisdictional claim governed by Federal Rule of Civil Procedure 12(b)(1). *See Kerns v. United States*, 585 F.3d 187, 194-96 (4th Cir. 2009) (holding that the FTCA's provision that the United States may incur tort liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" may be treated as jurisdictional when the state tort law requirements are threshold requirements not intertwined with the merits); *Zander v. United States*, 843 F. Supp. 2d 598, 602-603 (D. Md. 2012) (holding that compliance with the Maryland Health Care Malpractice Claims Act is jurisdictional for purposes of an FTCA claim), *aff'd*, 494 F. App'x 386 (4th Cir. 2012). It is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166

F.3d 642, 647 (4th Cir. 1999).  Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing.  When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns*, 585 F.3d at 192.  When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192.  The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

The Government's arguments that the RFRA claim and any Rehabilitation Act claim should be dismissed are based on consideration of submitted exhibits.  Where a Motion relies on information outside the Complaint, Rule 12(d) requires courts to treat such a motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion.  *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).  To show that a reasonable opportunity for

discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or a comparable filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002).

Gambino has been on notice from the title of the Government's Motion that it may be treated as seeking summary judgment and has submitted his own declaration and exhibits in opposing the Motion. However, Gambino has asserted, in various filings, that discovery is necessary before the Court resolves a Motion for Summary Judgment. Without addressing whether the Court could properly consider summary judgment on all claims without first affording discovery, the Court finds that Gambino has not identified any discovery that is necessary for resolution of the RFRA claim. Likewise, where the Government seeks dismissal of any Rehabilitation Act claim based on exhaustion of administrative remedies, the Court concludes that no discovery is necessary for resolution of that claim. Thus, the Court concludes that it may construe the Motion as a Motion for Summary Judgment for purposes of these claims.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine"

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

Finally, the Court's consideration of the ADA, FCA, and Sarbanes-Oxley Act claims is governed by 28 U.S.C. § 1915A, which requires the Court to dismiss any part of a complaint brought by a prisoner against a governmental entity or officer that fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

## B. FTCA

Defendants move for dismissal of Gambino's FTCA claims for medical malpractice and negligence because he failed to comply with conditions precedent to their filing. Under the FTCA the United States is liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The FTCA represents a limited waiver of sovereign immunity to the extent that it "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001).

To bring a claim under the FTCA, a plaintiff must "first present[] the claim to the appropriate Federal agency" and have the claim "finally denied by the agency in writing" before filing suit in federal court. 28 U.S.C. § 2675(a). To satisfy this requirement, the claim must be filed with the Federal agency through a Standard Form 95 or other written notification of an incident "accompanied by a claim for money damages in a sum certain." 28 C.F.R. §14.2(a) (2018). A claim is properly "presented" to the agency if it "(1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on [the] claim." *Ahmed v. United States*, 30 F.3d 514, 517 (4th Cir. 1994) (quoting *Adkins v. United States*, 896 F.2d 1324, 1326 (11th Cir.

1990)). A plaintiff may not file suit in federal court until the administrative claim is "finally denied by the agency in writing and sent by certified or registered mail," or until six months have passed without the agency making "final disposition" of the claim. 28 U.S.C. § 2675(a). This requirement is jurisdictional. *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). Although Gambino asserts that he has filed FTCA claims with the relevant agency, he does not provide specific information on their disposition. Notably, the Government does not claim or establish that he failed to satisfy this requirement.

Regardless, because the FTCA only permits the United States to be held liable in tort to the same extent that "a private person would be liable under the law of the place where the act occurred," *Medina*, 259 F.3d 223, Gambino's FTCA claims relating to medical malpractice and negligence fail because he has not complied with specific requirements to pursue his claim in Maryland. Because these FTCA claims relate to allegedly deficient health care, he had to comply with the requirements of the Maryland Health Care Malpractice Claims Act ("HCMCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 3–2A–01 to 3–2A–10 (2011), which establishes the state procedure for medical malpractice actions. *See Zander*, 843 F. Supp. 2d at 603 (holding that for an FTCA claim based on medical malpractice, a plaintiff must comply with the requirements of the HCMCA), *aff'd*, 494 F. App'x 386 (4th Cir. 2012). Under the HCMCA, before filing a medical malpractice tort claim "against a health care provider for medical injury," a plaintiff must submit the claim within 90 days to the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") to undergo arbitration. The plaintiff must submit with the claim "a certificate of qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." Md. Code Ann., Cts. & Jud. Proc. § 3–2A–04(a)(1)(i), (b)(1)(i). A medical malpractice action filed in either state or federal court

15

that fails to meet this requirement will be dismissed without prejudice. *Id.* § 3–2A–04(b)(1)(i); *see Willever v. United States*, 775 F. Supp. 2d 771, 777 (D. Md. 2011). Complying with HCMCA's requirements is "not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit," such that a plaintiff cannot litigate a claim at all without having done so. *Willever,* 775 F.Supp.2d at 777, 785. The HCMCA condition precedent applies to actions filed by self-represented inmates. *See e.g. Johnson v. Maynard*, No. ELH-12-2692, 2013 WL 4176958, at *13 n. 20 (D. Md. Aug. 12, 2013); *Skaggs v. Corr. Med. Servs., Inc.*, No. PJM-09-3004, 2010 WL 1713649, at *4 (D. Md. Apr. 26, 2010). Because Gambino failed to comply with the HCMCA, this Court lacks subject matter jurisdiction over this lawsuit. *See Zander*, 843 F. Supp. 2d at 602-03, *aff'd*, 494 F. App'x 386 (4th Cir. 2012).

In his Amended Response, Gambino counters that he should not be barred by his failure to comply with the HCMCA because this "Court has seen evidence of dilatory actions by Defendants in obstructing him from obtaining such a certificate." Am. Response 5, TDC-17-1701, ECF No. 32-1. Beyond claiming that verbal requests for assistance in meeting this requirement were denied, Gambino has provided emails he sent to prison officials in 2018 requesting assistance in locating a physician to offer a second opinion or an expert opinion, including a June 12, 2018 email he sent to the Assistant Warden of FCI Fort Dix, New Jersey, at which he was then housed, asking for a list of local doctors and a "furlough" to see a doctor outside the prison. Am. Response Ex. 1 at 1, TDC-17-1701, ECF No. 32-3. The request was denied for security reasons. On June 21, 2018, Gambino, sent another email to a staff member at FCI Fort Dix in which he asked for information to assist in finding a doctor who could provide expert testimony. On June 26, 2018, Gambino received a response that stated, "We cannot involve ourselves in your legal matters and this is not

a service we provide to the inmates. You can write to the court if you have questions or concerns about obtaining an expert." *Id.* at 2.

These denials for assistance came not from Defendants, but from officials within a different federal prison from the one at which the alleged medical malpractice occurred. Moreover, Gambino sent his requests for assistance in June 2018, after he filed the Complaints in this case in 2017, long after the alleged malpractice or negligence purportedly occurred at FCI Cumberland between March 2015 and March 2016, and long after the expiration of the 90-day period for filing a claim under the HCMCA. Gambino thus has not provided a basis to excuse his failure to comply with the HCMCA. Where Gambino did not comply with that requirement, the Court will dismiss without prejudice Gambino's FTCA claims of medical malpractice and negligence for lack of subject matter jurisdiction.

The Court thus need not, and does not, address the Government's alternative arguments for dismissal of those FTCA claims. However, the Court notes that the Government's arguments were limited to tort claims for medical malpractice and negligence and did not address the other FTCA claims asserted relating to non-medical acts or omissions. Accordingly, the Court will dismiss only those FTCA claims relating to medical malpractice and medical negligence.

### C.    RFRA

The Government argues that Gambino has failed to state a plausible claim under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1, relating to dental care he received while at FCI Cumberland. RFRA provides "very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 693 (2014). The statute provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section." 42 U.S.C. § 2000bb-

1(a). Subsection (b) states that "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b). RFRA creates a statutory cause of action for a plaintiff whose free exercise of religion is substantially burdened by the application of a facially neutral law or policy. *Id.* § 2000bb-1(c).

Here, Gambino asserts that it is against his religious beliefs to have his tooth extracted. However, Gambino was not required or forced to have his tooth extracted. Rather, a dentist, Dr. McGahee, recommended that he allow the tooth to be removed to prevent a severe infection, and when Gambino rejected that recommendation, McGahee told him that as necessary he could report to sick call and seek treatment for pain or other future issues with the tooth, including providing irrigation and plaque removal. Thus, even if McGahee declined to provide Gambino with special cleanings on a specific schedule, she continued to offer services to prevent infection in that tooth. Although dental staff did have Gambino sign a form acknowledging that he had refused to allow the tooth extraction and that he assumed responsibility for complications that may arise from that decision, there is no evidence that signing such a form substantially burdened Gambino's free exercise of religion, as his asserted religious beliefs only forbid the extraction of teeth, not the signing of forms. Even when the facts are viewed in the light most favorable to Gambino, there is no basis to conclude that Defendants substantially burdened Gambino's free exercise of religion. Accordingly, the Government is entitled to summary judgment on Gambino's RFRA claim.

**D.     ADA and the Rehabilitation Act**

Gambino asserts a claim for a violation of the ADA in both of his Complaints in which he generally alleges that he has not received accommodations for disabilities, such as a cane and

18

special shoes. Although the Government does not address Gambino's ADA claim, the Court reviews it under 28 U.S.C. § 1915A(b)(1), which permits dismissal of allegations in a complaint brought by a prisoner against a governmental entity that fail to state a claim upon which relief may be granted.

Gambino's ADA claim is not cognizable because Title II of the ADA, which prohibits disability discrimination in public services, does not apply to federal prisons. *See* 42 U.S.C. § 12131 (defining "public entity" as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government"); *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) (holding that the Federal Communications Commission cannot be held liable under Title II of the ADA because it does not apply to the federal government); *Phillips v. Tiona*, 508 F. App'x 737, 752 (10th Cir. 2013) (holding that "Title II of the ADA does not apply to federal prisoners in federal prisons"). Accordingly, the Court will dismiss Gambino's ADA cause of action for failure to state a claim.

Although Gambino does not explicitly assert a claim under the Rehabilitation Act, the Government addresses the Rehabilitation Act in its Motion, presumably construing Gambino's ADA claim as a claim under the Rehabilitation Act, which does apply to federal prisons. *See* 29 U.S.C. § 794 (2012) (prohibiting discrimination on the basis of disability by any recipient of federal funding or under any program or activity conducted by any Executive Branch agency of the federal government). Because Gambino is self-represented, the Court will construe the ADA claim as including a Rehabilitation Act claim and address the Government's affirmative defense that Gambino failed to exhaust his administrative remedies. *See Erickson*, 551 U.S. at 94 (holding that pleadings of self-represented litigants should be construed liberally).

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is required for "any suit challenging prison conditions, not just for suits under § 1983." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Although the United States Court of Appeals for the Fourth Circuit has yet to rule on the precise issue of whether the exhaustion requirement of the PLRA applies to claims brought under the Rehabilitation Act, all circuits to do so have held that it does. *See, e.g., O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061-62 (9th Cir. 2007) (holding that "the plain language of § 1997e(a) and relevant Supreme Court authority require prisoners bringing ADA and Rehabilitation Act claims to exhaust those claims through available administrative remedies before filing suit"); *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (affirming the dismissal of a prisoner complaint brought under the ADA for failure to exhaust); *see also Harding v. Green*, No. JFM-11-1561, 2012 WL 1203956, at *2 (D. Md. Apr. 9, 2012) (holding that "exhaustion under the PLRA is required for . . . claims under the Rehabilitation Act"). Accordingly, summary judgment may be granted in favor of the Government if it shows that Gambino failed to exhaust his disability discrimination claim prior to bringing suit.

Exhaustion generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not

considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. *Ross*, 136 S. Ct. at 1859-60. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Id.*

To exhaust a claim under the Rehabilitation Act, a federal prisoner must first exhaust the usual BOP administrative remedy procedure applicable to conditions-of-confinement claims and, after that process has been completed, submit a complaint to the Director for Equal Employment Opportunity ("EEO"). *See* 28 C.F.R. § 39.170(d). The Government argues that Gambino has failed to comply with this requirement and submits a declaration by Steve Cason, a BOP Senior Equal Employment Opportunity Specialist who processes complaints filed under 28 C.F.R. § 39.170(d), stating that Gambino had not filed a complaint with his office as of August 15, 2018. Although Gambino asserts that he exhausted the administrative remedies available him to comply with the PLRA, he does not dispute that he failed to submit a complaint to the EEO Director. He also does not assert that the EEO process was unavailable to him; rather, he argues incorrectly that it is not related to his Rehabilitation Act claim. Accordingly, even when the evidence is viewed in the light most favorable to Gambino, the Court finds that there is no genuine issue of material fact whether Gambino exhausted his administrative remedies under the Rehabilitation Act. Because he did not exhaust his administrative remedies, the Government's Motion for Summary Judgment on this claim will be granted.

## E. False Claims Act

Gambino asserts a claim under the False Claims Act, 31 U.S.C. §§ 3729-3733, based on his allegation that certain Defendants acted fraudulently against him by purposely depriving him of his "basic medical needs," medical devices, "pre-prescribed medications," and "pre-prescribed treatments." Supp. Compl. at 85 ¶ 5, TDC-17-2311, ECF No. 2. He claims that these Defendants have "achieved substantial financial gains and benefits" at his expense and that the savings are used "for other things controlled by the Warden," including salaries, job security, and "pet projects enjoyed by Defendants." *Id.* at 85-87 ¶¶ 4, 11.

Although the Government does not seek dismissal of Gambino's FCA claim in its Motion, the Court reviews the claim under 28 U.S.C. § 1915A(b)(1). Regardless of whether Gambino's allegations are true, a self-represented litigant may not bring a *qui tam* action under the FCA. *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775-76 (7th Cir. 2004); *United States ex rel. Brooks v. Lockheed Martin Corp.*, 237 F. App'x 802, 803 (4th Cir. 2007). In such an action, a relator or whistleblower is entitled to share in the recovery if the case is successful. *United States ex rel. Milam v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 36, 48-49 (4th Cir. 1992). However, the real party in interest in a *qui tam* proceeding is the United States, so the need for adequate legal representation counsels against permitting self-represented suits. *United States ex rel. Brooks*, 237 F. App'x at 803 (citing *United States ex rel. Milam*, 961 F.2d at 50). Because Gambino may not pursue this claim as a self-represented litigant, his FCA claim will be dismissed.

## F. Sarbanes-Oxley Act

Gambino alleges that the Government destroyed records and emails related to his mental health care and legal proceedings, in violation of the Sarbanes-Oxley Act. Although the

Government does not seek dismissal of Gambino's Sarbanes-Oxley Act claim in its Motion, the Court reviews the claim under 28 U.S.C. § 1915A(b)(1).

Gambino does not cite a specific statutory provision of the Sarbanes-Oxley Act, but his repeated reference to destruction of documents reveals that he has asserted a claim under 18 U.S.C. § 1519, which provides that:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (2012). As reflected in the statutory language, as well as its codification under Title 18 of the United States Code covering Crimes and Criminal Procedure, 18 U.S.C. § 1519 is a criminal statute. *See also* Harold S. Bloomenthal & Samuel Wolff, *Sarbanes-Oxley Act in Perspective* § 8:8 (June 2018 Update) (stating that the provision of the Sarbanes-Oxley Act barring document-shredding "is in the form of an addition to the criminal code"). Accordingly, the language of the statute does not explicitly confer a private right of action.

Courts are "quite reluctant to infer a private right of action from a criminal prohibition alone." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). Furthermore, "no circuit or Supreme Court opinion has held that § 1519 creates a private right of action." *Peavey v. Holder*, 657 F. Supp. 2d 180, 190-91 (D.D.C. 2009), *aff'd*, No. 09-5389, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010). Thus, the district courts to address the issue have declined to infer a private right of action from 18 U.S.C. § 1519. *See, e.g., id.* (dismissing the plaintiff's claim under § 1519 for lack of a private cause of action); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 77 (D.D.C. 2015) (same); *Antonelli v. Kennedy Hosp.*, No. 17-13780-RBK/KMW, 2018 WL 443455, at *2 (D.N.J. Jan. 16, 2018) (same).

Following the guidance of these decisions, the Court declines to infer a private right of action from 18 U.S.C. § 1519. Thus, Gambino has failed to state a claim under the Sarbanes-Oxley Act "because there is simply no claim to bring under this statute." *Antonelli*, 2018 WL 443455, at *2.

## CONCLUSION

For the foregoing reasons, Gambino's Motions for Appointment of Counsel and Gambino's Motions to Stay will be DENIED; Gambino's Motion for Leave to Amend his Response to the Government's Motion to Dismiss will be GRANTED; and the Government's Motion to Seal will be GRANTED IN PART and DENIED IN PART. The Government's Motion to Dismiss will be GRANTED in that the Court will dismiss Gambino's FTCA claims as they relate to medical malpractice and medical negligence, the ADA claims, the FCA claim, and the Sarbanes-Oxley Act claims and will grant summary judgment on Gambino's RFRA claim and any Rehabilitation Act claim. A separate Order shall issue relating to these rulings.

The remaining claims consist of claims against individual Defendants in their individual capacities (1) under *Bivens* for violations of the Eighth Amendment based on alleged deliberate indifference to serious medical and mental health needs or excessive force; (2) under *Bivens* for violations of the First Amendment based on alleged retaliation for grievances filed by Gambino; and (3) for violations of the Privacy Act based on the alleged release of certain personal information relating to Gambino. FTCA claims against the Government unrelated to medical malpractice and medical negligence also remain.

The Court will, in a separate Order to be issued at a later date, identify to Gambino the specific individual Defendants it deems to be remaining Defendants and, upon confirmation by Gambino that he continues to seek to pursue claims against those Defendants, direct service of those Defendants by the United States Marshal.

Date: March 20, 2019

THEODORE D. CHUANG
United States District Judge